**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | |
|---|---|
| In re:   GEMCRAFT HOMES, INC.,<br><br>                          Debtor. | CASE NO. 09-31696 (NVA)<br>  (CHAPTER 11) |
| In re:  Gemcraft Homes, Inc.<br>          DLM, LLC<br>          Gemcraft Homes Group, Inc.<br>          Gemcraft Homes Forest Hill, LLC<br>          Gemcraft Chesapeake, LLC<br>          Harkins Property, LLC<br>          The Preserve at Jefferson Creek, LLC<br>          S & M Properties, LLC,<br><br>                          Debtors. | Case No. 09-31696 (NVA)<br>Case No. 09-31702 (NVA)<br>Case No. 09-31073 (NVA)<br>Case No. 09-31704 (NVA)<br>Case No. 09-31706 (NVA)<br>Case No. 09-31707 (NVA)<br>Case No. 09-31708 (NVA)<br>Case No. 09-31709 (NVA)<br><br>(Jointly Administered under<br>Case No. 09-31696 (NVA)) |

**DEBTORS' MOTION FOR ENTRY OF FINAL ORDER PURSUANT TO
SECTIONS 105, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND
BANKRUPTCY RULES 2002, 4001 AND 9014 (A) AUTHORIZING AND APPROVING
POSTPETITION FINANCING FROM THE PATAPSCO BANK AND GRANTING
SECURITY INTERESTS AND SUPER-PRIORITY ADMINISTRATIVE EXPENSE
STATUS; (B) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C.
SECTION 362; AND (C) AUTHORIZING DEBTORS' LIMITED USE OF CASH
<u>COLLATERAL PURSUANT TO 11 U.S.C. SECTION 363</u>**

The above-captioned debtors and debtors in possession (together, the "Debtors"), by their undersigned counsel, hereby move this Court for entry of a final Order, substantially in the form attached hereto (the "Financing Order"), pursuant to Sections 105, 362, 363 and 364 of the United States Bankruptcy Code (the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"):  (I) authorizing Gemcraft Homes Group, Inc. ("GHG") and the debtor guarantors Gemcraft Homes, Inc., Gemcraft Homes Forest Hill, LLC, and DLM, LLC (together, the "Guarantors"), to enter into a debtor in possession credit agreement with The Patapsco Bank ("Patapsco"), pursuant to the terms of a Construction Loan Agreement (the "Loan Agreement"), Promissory Note, Guaranty of Payment and Performance and Indemnity Deed of Trust, Assignment and Security Interest (the "IDOT")

(as may be modified from time to time, and together with any other documents entered into in connection with the debtor-in-possession facility, the "Patapsco DIP Credit Agreement");[1] (II) authorizing the granting of liens on pre-petition and post-petition collateral and super-priority administration expense claims to Patapsco; (III) modifying the automatic stay; and (IV) authorizing Debtors' limited use of cash collateral.  In support of this Motion, the Debtors respectfully represent as follows:

### Introduction

1.  Prior to the commencement of these bankruptcy cases, Patapsco loaned to GHG $2,500,000 for the purpose of acquiring lots and constructing homes on those lots to sell to customers.  The land subject to Patapsco's prepetition liens (the "Land") consists of ten lots (the "Lots"), of which six are under contract for sales to customers, for whom the Debtors are ready to begin construction.  For these Lots and the construction of homes on the Lots, Patapsco has agreed to provide a postpetition revolving line of credit in the amount of $1,200,000 (the "Patapsco Facility"), under the terms and conditions set forth in the Patapsco DIP Credit Agreement and the Financing Order.

2.  At the outset of these cases, the Debtors received the Court's approval of secured postpetition credit facilities from Regions Bank and M&T Bank.  Patapsco is the third bank that has agreed to extend postpetition credit to the Debtors.  Although the amount of the Patapsco Facility is not as significant as the Debtors' other two secured postpetition facilities, the Debtors view Patapsco's willingness to become part of the Debtors' going-forward business plan to be a

---

[1]  Copies of the Construction Loan Agreement, Promissory Note, and Guaranty of Payment and Performance (the "Guaranty) are attached hereto as <u>Exhibit A</u> through <u>Exhibit C</u>, respectively.  A copy of the Indemnity Deed of Trust, Assignment and Security Agreement (the "IDOT") will be provided to any party in interest upon request.

2

significant step towards the anticipated and hopeful postconfirmation success of the Debtors. Accordingly, the Debtors submit that entry into the Patapsco DIP Credit Agreement is a sound exercise of the Debtors' business judgment, is in the best interest of the Debtors, their creditors and their estates, and should be approved.

**Disclosures Required by Bankruptcy Rule 4001(c)(1)**

3. Pursuant to Bankruptcy Rule 4001(c)(1), the material provisions of the Patapsco DIP Credit Agreement are as follows:[2]

    (a)    <u>Borrower</u>:  Gemcraft Homes Group, Inc.

    (b)    <u>Lender</u>:  The Patapsco Bank

    (c)    <u>Guarantors</u>:  Gemcraft Homes, Inc., Gemcraft Homes Forest Hill, LLC, and DLM, LLC.

    (d)    <u>Collateral</u>:  The Guaranties, which are secured by the Land and certain personal property relating to the Land, as set forth with greater particularity in the IDOT (the "Collateral"). The Collateral currently secures the prepetition indebtedness to Patapsco, and does not include any property that previously was unencumbered or that is subject to a lien held by any lender other than Patapsco.

    (e)    <u>Use of Proceeds</u>:  The proceeds may be used: (a) to pay interest on the loan; (b) to pay or to refinance a portion of the Lots; (c) to pay reasonable and customary costs for labor, services, materials and associated costs incurred in connection with the construction of homes on the Lots; or (d) as otherwise authorized by Patapsco.

    (f)    <u>DIP Facility Fee/Other Costs</u>:  $6,000, which shall be due and earned upon Court approval of the Patapsco DIP Credit Agreement. The Debtors also are required to pay costs, fees and expenses of Patapsco in connection with the making and ongoing administration of the Patapsco DIP Credit Agreement.

    (g)    <u>Interest Rate</u>:  Prime Rate (as defined in the Promissory Note) plus one-eighth of one percent (1/8%) per annum, as more specifically set forth in the Promissory Note.

---

[2] This summary is qualified in its entirety by reference to the provisions of the Patapsco DIP Credit Agreement and the Financing Order.

3

(h) <u>Maturity</u>:  April 1, 2011.

(i) <u>Events of Default</u>:  Due to the length of the Events of Default section of the Loan Agreement, the Debtors refer to Section 6 of the Loan Agreement.

(j) <u>Super-priority Liens</u>:  The postpetition liens and security interests of Patapsco shall be first and senior in priority to all other interests and liens of every kind, nature and description, whether created consensually, by an Order of the Court or otherwise, with respect to the Collateral.

(k) <u>Borrowing Limit</u>: $1,200,000 discretionary revolving line of credit.

(l) <u>Borrowing Conditions</u>:  Among others: (i) Court approval of the Patapsco DIP Credit Agreement; (ii) delivery of fully executed and duly authorized loan documents in connection with the Patapsco DIP Credit Agreement; (iii) in the case of a land acquisition draw, the conditions listed in Section 4.3(l) of the Loan Agreement entitled "Additional Conditions to Land Acquisition Draws"; and (iv) other conditions as set forth in Section 4 of the Loan Agreement.

4. In addition to requiring a summary of the material provisions of a debtor in possession facility, Bankruptcy Rule 4001(c)(1)(B) requires that certain provisions be identified and summarized, with citations to the applicable sections of the loan documents and/or orders. The Debtors believe that certain provisions of the Patapsco DIP Credit Agreement implicate Bankruptcy Rule 4001(c)(1)(B), and that such provisions are necessary in the context and circumstances of these cases.

5. Bankruptcy Rule 4001(c)(1)(B)(i) requires identification of provisions that grant priority or a lien on property of the estate under Section 364(c) or (d) of the Bankruptcy Code. The Loan Agreement and the Financing Order both provide that the liens granted to Patapsco on the Collateral, and the priorities accorded the postpetition obligations with respect to the Patapsco DIP Credit Facility (the "Obligations"), shall have the priority and senior secured status afforded by Sections 364(c) and 364(d)(1) senior to all other claims and interests, subject to

4

certain exceptions set forth in the Loan Agreement. Loan Agreement at ¶ 5.3(a)(ii); Financing Order at ¶ 2.1.1.

6. Bankruptcy Rule 4001(c)(1)(B)(ii) requires identification of provisions that provide adequate protection or priority for a claim that arose before the commencement of the case. The Financing Order provides adequate protection and priority to Patapsco in the form of replacement liens and security interests in the Collateral, junior and subordinate to the liens and security interests granted to Patapsco securing the Obligations. Financing Order at ¶ 2.3.2.

7. Bankruptcy Rule 4001(c)(1)(B)(iii) requires identification of provisions that provide a determination of the validity, enforceability, priority or amount of a claim that arose before the commencement of the case or any lien securing a claim. The Financing Order contains an acknowledgment of prepetition loan documents, obligations, and collateral including the validity, enforceability, priority and amount of Patapsco's claims. This acknowledgement is binding only on the Debtors and is without prejudice to the rights of other parties to challenge the extent, validity and priority of Patapsco's prepetition liens and claims. Financing Order at ¶ D.

8. Bankruptcy Rule 4001(c)(1)(B)(iv) requires identification of provisions that provide for a modification of the automatic stay. The Financing Order provides that, upon an "Event of Default" under the Patapsco DIP Credit Agreement, all Obligations shall immediately become due and payable and Patapsco shall be automatically and completely relieved from the effect of any stay under Section 362 of the Bankruptcy Code, without further notice, application or Order of the Court. Financing Order at ¶ 3.4.

9. Bankruptcy Rule 4001(c)(1)(B)(vii) requires identification of provisions that waive or modify the applicability of non-bankruptcy law relating to perfection of a lien on

5

property of the estate. The Financing Order contains such a provision. Financing Order at ¶ 2.1.3.

10. Bankruptcy Rule 4001(c)(1)(B)(viii) requires identification of provisions that release, waive or limit any claim or other cause of action belonging to the estate or the trustee. The Loan Agreement contain provisions under which the Debtors release "lender liability" claims upon entry of a final Order and agree to indemnify Patapsco from claims in connection with the Project (as defined in the Loan Agreement). Loan Agreement at ¶¶ 5.3(c), 7.4. Financing Order at ¶ 4.4.

11. Bankruptcy Rule 4001(c)(1)(B)(x) requires identification of provisions that provide a release, waiver or limitation of any right under Section 506(c). The Loan Agreement and Financing Order provide that Patapsco's lien on the Collateral securing the Obligations and its respective administrative claims under Sections 364(c)(1) and 364(d) shall have priority over any claims arising under Section 506(c). Financing Order at ¶ 4.3.

## Jurisdiction and Venue

12. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O).

13. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## General Background

14. On November 9, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

15. The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

16. On November 17, 2009, the United States Trustee for this district appointed the Official Committee of Unsecured Creditors.

17.     No request for a trustee or examiner has been made in these Chapter 11 cases.

18.     The Debtors are in the process of formulating a plan of reorganization to emerge from these Chapter 11 cases as going concerns for the benefit of creditors and other stakeholders.

### Patapsco's Prepetition Loans

19.     On January 26, 2005, Patapsco loaned to GHG $1,700,000, which amount was increased, on December 1, 2005, to $2,500,000 (the "Prepetition Loan").  The Prepetition Loan is guaranteed by William R. Luther, Jr., Vickie A. Luther, Brian E. Fromme, and Sharon L. Babcock, all of whom are principals of the Debtors, as well as certain corporate guarantors.  The prepetition corporate guaranties are secured by indemnity deeds of trust against the Collateral owned by the respective corporate guarantors.

20.     As of the Petition Date, the total indebtedness owed to Patapsco under the Prepetition Loan is $732.660.03, consisting of principal in the amount of $727,190.20, accrued and unpaid interest in the amount of $5,100.80, plus late charges of $369.03, fees and other charges due and payable under the Prepetition Loan documents.

### Relief Requested

21.     By this Motion, the Debtors seek the entry of a final Order, in substantially the form of the Financing Order, authorizing and approving the Patapsco DIP Credit Agreement.

### Basis for Relief

**A.    The Court Should Authorize the Debtors to Incur Postpetition Debt Secured by a Senior Priority Lien and Grant Patapsco Super-Priority Administrative Priority.**

22.     This Court should authorize the Debtors to enter into the Patapsco DIP Credit Agreement, secured by senior priority liens on the Collateral, and should grant the Obligations super-priority administrative claim status pursuant to Section 364 of the Bankruptcy Code, as provided in the Financing Order.

7

23. Section 364 of the Bankruptcy Code permits debtors to obtain postpetition credit, but provides different requirements depending upon whether the credit is (a) unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, (b) unsecured credit allowable as a super-priority administrative expense, or (c) secured credit with varying lien priorities. 11 U.S.C. § 364. Specifically, pursuant to section 364(c), if a debtor is unable to obtain unsecured credit allowable as an administrative expense, then the Court, after notice and a hearing, may authorize the debtor to obtain credit or incur debt "(1) with priority over any and all administrative expenses of the kind specified in section 503(b) or 507(b) of this title; (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or (3) secured by a junior lien on property of the estate that is subject to a lien." 11 U.S.C. § 364(c).

24. Where a debtor is unable to obtain credit under section 364(c), the debtor may obtain credit secured by a senior or equal lien on property of the estate that is already subject to a lien (referred to as a priming lien), as long as the secured prepetition creditor is provided adequate protection. 11 U.S.C. § 364(d).

25. Generally, sections 364(c) and (d) of the Bankruptcy Code require debtors to demonstrate that they are unable to obtain unsecured credit allowable under section 503(b)(1) as an administrative expense pursuant to sections 364(a) or (b). See In re Ames Dep't Stores, Inc., 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("a debtor is not required to seek credit from every possible source . . . [but only to] show that it has made a reasonable effort to seek other sources of credit available"); see also Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir. 1986) (hereafter "Snowshoe") (finding that although there is "no duty to seek credit from every possible lender before concluding that such credit is unavailable,"

8

the statute requires a debtor to show "by a good faith effort that credit was not available without the senior lien").

26. Against this statutory backdrop, courts evaluate the facts and circumstances of a debtor's case, and accord significant weight to the debtor's business judgment regarding the necessity for obtaining the financing. <u>See</u>, <u>e.g.</u>, <u>Snowshoe</u>, 789 F.2d at 1088; <u>Ames</u>, 115 B.R. at 40. For example, the need for a swift injection of cash to preserve a debtor's business satisfies the requirements of Section 364(d) when coupled with unsuccessful attempts to locate alternative financing. <u>See</u>, <u>e.g.</u>, <u>Snowshoe</u>, 789 F.2d at 1088 (primary facts supporting postpetition liens included lack of alternative financing sources and need to obtain prompt cash infusion to preserve value of debtor's business); <u>Ames</u>, 115 B.R. at 40.

27. In the present case, granting a priming lien under Section 364(d) is warranted. Construction on six of the Lots is ready to move forward. Patapsco has agreed to extend postpetition credit to GHG in the form of the Patapsco Facility, secured by the Collateral on which Patapsco already has liens. Patapsco thus seeks only to prime itself with the infusion of new money into the project.

28. Given Patapsco's prepetition liens on the Collateral, the Debtors could not possibly obtain funding to construct homes on the Lots solely under Section 364(c) from another lender. The Debtors therefore concluded that the proposed Patapsco DIP Credit Agreement is the most favorable under the circumstances, and was the only financing option available to construct homes on the Lots.

29. Accordingly, the Debtors' decision to enter into the Patapsco DIP Credit Agreement represents an exercise of sound business judgment. The financing under the Patapsco DIP Credit Agreement addresses the Debtors' need for funding to construct homes on the Lots

and to sell finished lots to customers. Approval of the Patapsco DIP Credit Agreement, for these reasons, is in the best interest of the Debtors, creditors and the Debtors' estates.

**B.     This Court Should Modify the Automatic Stay to Permit Actions Authorized or Permitted by the Patapsco DIP Credit Agreement and the Financing Order.**

30.     The Patapsco DIP Credit Agreement and the Financing Order contemplate a modification of the automatic stay to permit Patapsco, to the extent necessary, to perform any act authorized or permitted by the Patapsco DIP Credit Agreement and the Financing Order, including, without limitation:  (a) to implement the postpetition financing arrangements pursuant to the Financing Order; (b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the Collateral; and (c) to assess, charge, collect, advance, deduct and receive payments with respect to the Obligations, including, without limitation, interest, fees, costs and expenses permitted under the Patapsco DIP Credit Agreement, and apply such payments to the obligations pursuant to the Patapsco DIP Credit Agreement and the Financing Order.

31.     Stay modifications of this type are customary features of postpetition debtor in possession financing facilities and, in the Debtors' business judgment, are reasonable under the circumstances.  Accordingly, the Court should modify the automatic stay to the extent contemplated by the Patapsco DIP Credit Agreement and the Financing Order.

**Statement Pursuant to Local Bankruptcy Rule 9013-2**

32.     Pursuant to Local Rule 9013-2, the Debtors state that, in lieu of submitting a memorandum in support of this Motion, they will rely solely upon the grounds and authorities set forth herein.

WHEREFORE, the Debtors respectfully request that the Court: (i) enter an Order approving the Patapsco DIP Credit Agreement, substantially in the form of the proposed Order attached hereto; and (ii) grant the Debtors such other and further relief as is just and proper.

| | |
|---|---|
| DATED:  March 26, 2010 | /s/ G. David Dean |
| | Irving E. Walker (Bar No. 00179) |
| | Gary H. Leibowitz (Bar No. 24717) |
| | G. David Dean (Bar No. 26987) |
| | Cole, Schotz, Meisel, Forman & Leonard, P.A. |
| | 300 East Lombard Street, Suite 2000 |
| | Baltimore, Maryland  21202 |
| | 410-230-0660 |
| | 410-230-0667  Facsimile |
| | iwalker@coleschotz.com |
| | gleibowitz@coleschotz.com |
| | ddean@coleschotz.com |
| | |
| | Attorneys for Debtors and Debtors-in-Possession |

45674/0002-6400061v3